PAUL F. McLAUGHLIN, PROSECUTOR–APPELLANT, v.
NEW JERSEY CIVIL SERVICE COMMISSION,
DEFENDANT–RESPONDENT.

Argued December 20, 1948—Decided January 17, 1949.

*Mr. Frank I. Casey* argued the cause for the prosecutor-appellant.

*Mr. Eugene T. Urbaniak* argued the cause for the defendant-respondent (*Mr. Walter D. Van Riper,* Attorney General).

PER CURIAM. The judgment under review will be affirmed for the reasons expressed in the opinion of Mr. Justice Donges in the court below.

HEHER, J. (dissenting). On September 16, 1947, the Department of Institutions and Agencies, by letter signed in its behalf by the Commissioner, advised appellant that "in compliance" with Rule 61 of the Civil Service Commission, he was "considered to have resigned" his positon as Senior Parole Officer at the State Prison, effective that date; and the Civil Service Commission, on appeal, concurred in that action. This for the reason that, having failed to comply with an order of

the Department of Institutions and Agencies to report for duty on the prior September 9th, he had "absented himself without leave" and was therefore deemed to have resigned.

But appellant was then absent from duty under sick leave granted and renewed by the Principal Keeper of the prison, based upon a certification of physical incapacity by his attending Physician, Dr. James A. Murphy. Sick leave was first given on June 26, 1946, when the physician attested in writing that appellant was "suffering from nervousness and should have a period of rest;" and the leave was continued on August 12th following. Three days later, the physician again certified that appellant was "still suffering from a nervous upset that will not permit him to return to his work."

Under R. S. 11:14–2, a certificate of "a reputable physician in attendance" is "required as sufficient proof of need" of sick leave. Dr. Murphy is a physician of the highest repute. The leave thus granted and continued on the basis of Dr. Murphy's certifications was not revoked by the Principal Keeper. The Department of Institutions and Agencies was not his agent for that purpose. There was no such grant of authority, assuming the power to make the delegation. The delegation of power invoked as purporting to support the action thus taken by the Department of Institutions and Agencies, made by the Principal Keeper by letter under date of June 13, 1946, designated the department's Director of Parole, Dr. Bixby, as the Principal Keeper's "official agent * * * to do all things legally necessary and proper to provide for scientific, adequate and proper supervision of the parole of all prisoners released" from the prison, subject to the reservation that "in carrying out these delegated duties" the agent "will be acting on behalf of the Principal Keeper * * * and that at all times the legal custody of all paroled prisoners still resides in the Principal Keeper, subject to the delegation of authority contained herein." This designation was made pursuant to a resolution adopted by the Board of Managers of the prison two days before authorizing the Principal Keeper "to request the State Board of Control of Institutions and Agencies to extend facilities" of its Division of Parole "in order to provide a more

uniform, effective and efficient supervision of parolees released" from the prison, the "legal custody of all parolees" to "remain and continue to be vested in the Principal Keeper," and the constitutional and statutory "rights and duties" of the Principal Keeper to continue unimpaired. On July 2d following, the State Board of Control, acting upon the resolution of the Board of Managers of the prison cited *supra,* merely resolved "to extend the activity of the Central Parole Division to cover the State Prison." This latter resolution measures the undertaking and the authority assumed.

In these circumstances, I submit, there was not such "absence from duty" as would justify the inference of appellant's resignation under Rule 61 of the Civil Service Commission. The rule provides that an employee who is "absent from duty for five consecutive business days without notice to his superior officer of the reason for such absence and the time when he expects to return and without securing permission to be on leave from his superior officer, or who fails to report for duty within five business days after the expiration of any authorized leave of absence, shall be considered as having resigned." Appellant was on sick leave granted by the Principal Keeper, who was still his superior, and also for that matter the superior of his "official agent" in matters of parole. It was not within the province of the Department of Institutions and Agencies to terminate that leave. The power thus assumed was retained by the Principal Keeper. He reserved his constitutional and statutory "rights and duties;" and it goes without saying that he was not at liberty to surrender this authority and responsibility. On August 12th, long after the delegation of authority to Dr. Bixby, the then Principal Keeper, George W. Page, granted a continuance of sick leave to appellant. Can it be said that thereby he exceeded his authority? Manifestly not. And the Keeper testified in this proceeding that appellant's name was "taken off" the State's payroll over his objection; he was convinced appellant was entitled to sick leave and was "satisfied to grant it." This conviction was grounded in what he had learned from appel-

lant and the physician's certificate. Dr. Murphy testified at the hearing that the illness still persisted.

Certainly, the existence of the authority thus assumed by the Department of Institutions and Agencies was at least open to fair debate; and where, as here, the power is challenged on reasonable grounds, it cannot be said that there was a resignation within the intendment of Rule 61, if the challenge be not eventually sustained. Quite the contrary. In the circumstances there was no resignation, actual or presumed. Appellant was not charged with insubordination or wilful failure of duty as a ground of removal for cause. It is not in keeping with the spirit of the Civil Service law to deal with a civil servant in this summary fashion, especially where the servant has rendered long and faithful service. The rule of the Civil Service Commission has no such sweep.

I would reverse the judgment.

Mr. Justice OLIPHANT and Mr. Justice BURLING join in this opinion.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, WACHENFELD and ACKERSON—4.

*For reversal:* Justices HEHER, OLIPHANT and BURLING—3.