32 N.J. Super. 131 (1954)
108 A.2d 21
ERNEST C. CAREY, PLAINTIFF-APPELLANT,
v.
WATER DEPARTMENT OF THE CITY OF EAST ORANGE, DEFENDANT-RESPONDENT, AND DEPARTMENT OF CIVIL SERVICE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1954.
Decided September 27, 1954.
*132 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Samuel M. Goodman argued the cause for the plaintiff-appellant (Messrs. Goodman & Goodman, attorneys).
Mr. Walter C. Ellis argued the cause for the defendant-respondent Water Department of the City of East Orange.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
On January 14, 1953, and prior thereto, Ernest C. Carey was in the employ of the Water Department of the City of East Orange as a laborer, and as such had civil service status. On January 23, 1953 his employment was terminated on the ground that for five business days prior thereto he had absented himself from his employment in violation of Rule 60 promulgated by the Civil Service Commission, providing as follows:
"Any employee who is absent from duty for five consecutive business days without notice to his superior officer of the reason for such absence and the time when he expects to return and without securing permission to be on leave from his superior officer, or who fails to report for duty within five business days after the expiration of any authorized leave of absence shall be held to have resigned. Such resignation shall be treated as a resignation not in good standing and the appointing authority shall so report it to the chief examiner and secretary."
On appeal to the Department of Civil Service, his discharge was affirmed.
Mr. Carey's absence commenced with the 15th of January and continued thereafter until his return on the 23rd. The *133 testimony concerning the reason for his absence on the 15th is conflicting. Carey states that he was given the day off by his superior, Dominic D'Amore, to attend to some personal affairs. D'Amore insists that Carey was given the 15th off so that he might respond to a notice for his appearance at the county prosecutor's office to make a statement concerning a robbery he had witnessed. Carey counters with the assertion that he was given the 16th off for the latter purpose, but that on the 15th, having concluded his personal affairs, he telephoned to County Detective Martin E. Kenny to see if he could make the statement on the 15th; that Mr. Kenny acquiesced and accordingly the statement was taken on the 15th. Much ado is made in the record as to whether the arrangement for Carey to give the statement was to apply to the 15th or the 16th. Carey contends that it was for the 16th and in this he seems to be supported by County Detective Kenny; that having been given the 16th and also having been granted the 15th, the 16th cannot be considered as one of the five days he was absent from duty without leave. Carey testified that he did not return on the 16th because he was ill and had to go to his doctor for treatment; thereafter, he was under the doctor's care until January 22nd; that his doctor, Edd Jones, gave him a certificate to that effect; that when he returned to work on the 23rd, he informed Mr. D'Amore that the reason for his absence was illness; that he offered Mr. D'Amore the doctor's certificate but D'Amore refused to accept or read it. D'Amore testified, in substance, that Carey had not complied with the provisions of Rule 60, in that he never notified him that he was ill and unable to return to work or the time when he expected to return; that Carey did not secure any permission to leave except for the 15th and thereafter Carey was absent without notice or leave five business days, to wit: January 16, 19, 20, 21 and 22 (Saturday the 17th and Sunday the 18th were excluded as they were not regular business days).
The appellant asserts that on Monday, the 19th, he attempted to give notice to Mr. D'Amore by telephone, but being unable to reach him, he called a Mr. Carlucci, junior *134 engineer, and informed him of the reason for his absence. Mr. Carey admits that Mr. Carlucci told him he had no authority in the matter and that he should report to his superior officer, Mr. D'Amore. Mr. Carlucci testified further that Carey did not request him to notify Mr. D'Amore. However, Mr. Carlucci passed the information on to Mr. D'Amore.
Carey also points to the fact that he saw another employee, Rufus Cross, at the entrance of the East Orange General Hospital, and Carey told him he was sick and was going to see his doctor. The hospital is located on East 14th Street, on the border line between Newark and East Orange, some distance from Carey's home. The meeting with Cross was obviously a casual one and the record does not disclose any request by Carey for Cross to report to Mr. D'Amore. As a matter of fact, however, Cross did relate the incident to Mr. D'Amore.
The testimony is clear that at no time during his absence was Carey confined to bed; in fact, he went to the doctor's office every morning and although the city hall is only two blocks from his home  although farther from his sister's home where he stayed a part of the time  he never went to city hall to report to his superior. The city emphasizes the fact of Carey's daily visits to the doctor's office and yet his failure to go to the city hall, only two blocks from his home, to notify his superior of the reason for his absence and securing a continuance thereof for and including January 16th and thereafter.
It is significant that the appellant objected to any testimony as to the nature of Carey's illness and his objection was sustained. Dr. Jones' certificate indicated it was "gripp," but another witness testified that Carey told him it was a different disease.
Assuming, arguendo, that Carey was ill and treated by Dr. Jones, it is significant that in Dr. Jones' certificate and his affidavit there is a complete absence of any statement that Carey's illness was an incapacitating one and that he was unable to perform his daily duties. Dr. Jones merely *135 certified that he treated Carey at his office on the dates in question. Additionally, Carey's testimony as to his activities during the week, certainly creates a doubt as to his credibility on the question of the validity of the reason for his absence.
We are not seriously impressed with appellant's argument that he was given both the 15th and 16th off. It is undisputed that for the purpose of making the statement to the county detective he was given only one day; that he made the statement on the 15th; therefore, it was his duty to return on the 16th or obtain further leave of absence. Carey admits that when he obtained leave for the 15th he did not inform D'Amore of any illness. Yet, he says he did not return on the 16th because he was sick and had to see his doctor.
Rule 60 has been in effect in its present form, with minor revisions, since 1913. The revisions are concerned with the phrase "consecutive business days" or successive days. "Five consecutive business days" are presently employed in the rule. Appellant, after setting forth certain definitions of the word "consecutive," argues that "Appellant submits that even assuming that the appellant was absent on the 16th without leave, nevertheless, the intervening week-end prevented the 16th from being counted as part of the consecutive business days off." This contention is illogical and unmeritorious. We concur in the city's argument that "To support the plaintiff's contention on this point would render Rule 60 of the Civil Service Commission ineffectual and without any meaning. The argument offered, followed to its logical conclusion, would mean that an employee could be absent every week for four days and if a Saturday and Sunday intervened, the rule would not apply."
While it may appear that we have commented at some length on the testimony, it is not to be concluded therefrom that we have reviewed the facts for the purpose of making an independent finding. As a matter of fact, we are convinced that the findings of fact by the Civil Service Department are sufficiently supported by the record and we concur *136 therein. Consequently, no independent findings by this court are necessary. DeMoors v. Atlantic Casualty Insurance Company of Newark, 1 N.J. Super. 1 (App. Div. 1948); Tuzio v. Saylor, 1 N.J. Super. 61 (App. Div. 1948); Passarella v. Board of Commissioners, 1 N.J. Super. 313 (App. Div. 1949); Greenbrier, Inc., v. Hock, 14 N.J. Super. 39 (App. Div. 1951); certification denied 7 N.J. 581 (1951); In re Gutman, 21 N.J. Super. 579 (App. Div. 1952).
The question as to whether or not absence from civil service employment for five consecutive business days without leave or permission may be deemed by the employing agency as a resignation from such employment, was considered in the cases of McLaughlin v. New Jersey Civil Service Commission, 137 N.J.L. 338 (Sup. Ct. 1948), affirmed 1 N.J. 284 (1949), and in Griffin v. City of Jersey City, 4 N.J. Super. 81 (App. Div. 1949). In both cases the appellate courts refused to substitute their judgment for that of the administrative agency and concurred in the findings of the Commission and orders dismissing the employees for violating the rule.
The findings and order of the Civil Service Department are affirmed without costs to either party.